## R. P. GEIBE v. CHICAGO LAKE STATE BANK.[1]

June 27, 1924.

No. 23,965.

**When presentment of check to clearing house is sufficient.**

1. Under the established practice of banks belonging to a clearing house association to exchange checks and adjust balances through the clearing house, the presentment for payment of a check drawn upon a member bank and held by another member bank, is sufficient when the check is presented through the clearing house in accordance with the rules of the association.

**Presentment of check on outside bank to member of clearing house acting for it.**

2. When, by mutual consent, a bank not a member of the association is represented at the clearing house by a member bank and the outside bank thus gains admission to the clearing house and enjoys its advantages, it becomes a party to and is bound by the rules of the clearing house association of which it has knowledge. The presentment of its checks through the clearing house to its representative at the clearing house is a sufficient presentment to charge it with the consequences of a dishonor of one of its depositor's checks, upon principles recognized in the law of agency. Under such circumstances it cannot insist upon the presentment of the check at the counter of its banking house.

Action in the district court for Hennepin county to recover $5,020. The case was tried before Waite, J., who at the close of the testimony granted defendant's motion for a directed verdict. Plaintiff's

[1]Reported in 199 N. W. 514.

motion for a new trial was denied. From the judgment entered pursuant to the verdict, plaintiff appealed. Reversed.

*Mead & Bryngelson,* for appellant.

*Jesse Van Valkenburg,* for respondent.

LEES, C.

Appellant sued to recover damages for the dishonor of his check. At the close of the evidence the court instructed the jury to return to verdict against him and later denied his motion for a new trial, and this appeal followed.

The sole question is whether the check was duly presented for payment so as to charge respondent with liability for damages on the theory that the dishonor of the check was an impeachment on appellant's credit in business, he being the proprietor of a barber shop in the city of Minneapolis. It is conceded that he had funds on deposit with respondent in an amount more than sufficient to pay the check; that the check was protested for non-payment and that notice of protest was given to the different banks through which it had passed before it was protested. The check was dated October 19, 1921, was made payable to the Exchange Bank of Marcus, which is located in a small town in Iowa where appellant was visiting relatives and where he is well known. The payee bank indorsed the check to the First National Bank of Sioux City and it came from that bank to the Midland National Bank of Minneapolis on October 21. The Midland National is a member of the Minneapolis Clearing House, and so is the Bankers National Bank of Minneapolis. The respondent bank is not a member but had an agreement with the Bankers National under which that bank acted as its agent to clear its checks through the clearing house. It was understood that funds sufficient to take care of respondent's clearing house obligations should be kept on deposit with the Bankers National. On October 21 the deposit was not sufficient to cover the day's clearings. For that reason only, when, in the due course of business, the clearing house presented respondent's checks to the Bankers National Bank, payment was refused. Pursuant to the rules of the clearing house, the checks received from the Midland National Bank, including appellant's check, were

returned to that bank. Shortly. after 3 o'clock in the afternoon the bank's notary attempted to present them to respondent at its banking house, but the doors were closed in accordance with the custom of Minneapolis banks to close at the hour mentioned. Being unable to gain admittance or get payment, the notary returned to his bank and the check went to protest.

Without stopping to consider the effect of the last attempt to present appellant's check for payment, we go directly to a consideration of the effect of the prior presentment to the Bankers National Bank.

1. This court has held that although the relation of debtor and creditor exists between a banker and a depositor, it is not the duty of the banker, as it is of an ordinary debtor, to seek the creditor and pay him wherever found; that a banker does not undertake to pay without regard to place; that his engagement is to pay at his banking house when payment is called for there; that it is parcel of his contract to pay that, as a condition precedent to enforcement of the contract, the depositor shall call upon him to do so at his banking house; and that there is no default until such a call is made, but the banker may waive or dispense with this condition. Branch v. Dawson, 33 Minn. 399, 23 N. W. 552; Peabody v. Citizens State Bank, 98 Minn. 302, 108 N. W. 272.

The Uniform Negotiable Instruments Act provides that presentment for payment must be made by the holder or some person authorized to receive payment on his behalf at a proper place; that the instrument must be exhibited to the person from whom payment is demanded; and that where an instrument is payable at a bank presentment must be made during banking hours. Sections 5884, 5886, 5887, G. S. 1913 (Unif. Neg. Inst. Act, §§ 72, 74, 75). It declares that a check is a bill of exchange and that the provisions of the act applicable to bills of exchange payable on demand apply to checks. Section 5997, G. S. 1913 (Unif. Neg. Inst. Act § 185). The drawer may have an action against the bank for refusing to honor his check, but of course it is essential that the check be duly presented and payment refused. In Peabody v. Citizens State Bank, supra, it was said (p. 307):

"Presentment of a check for payment is made when the holder or his agent produces and exhibits it to the proper official or agent of the bank, so that he may have an opportunity to see that it is signed by the depositor, that it is so dated as to be payable at the time when it is presented, that it is properly filled out, that the party presenting it has the legal title to it by indorsement or otherwise, and that the indorsement, if any, is genuine."

This language was used with reference to the presentment of checks drawn upon a village bank. The instant case has to do with the presentment of a check drawn on a bank in a city where there is a clearing house for the common exchange among bankers of checks held by each member of the clearing house against every other member and a settlement through the clearing house of the resulting differences. An excellent statement of the manner in which banks transact business through the clearing house will be found in section 349 of Morse on Banking. We gather from the record that the Minneapolis clearing house is operated substantially in the manner described by the author.

The effect of the presentment of a check at or through a clearing house has rarely been considered by the courts. It has been said:

"That the system of presentment through the clearing-house is a legal presentment for payment, to the bank on which the check is drawn,—a matter which it would seem could never be doubted,—has been specifically ruled in England." Morse, Banking, § 354.

With reference to settlements made at the clearing house between the member banks, the author has this to say [section 349]:

"The casting of the balances at the clearing-house is not of course, as it would be impossible that it should be, binding upon any bank as to the genuineness· or the honoring of the checks which are placed in its drawer, and which purport to be honestly drawn upon it by depositors having funds. A time is therefore set within which each bank is expected to examine all such checks, and to return such as it refuses to pay. The computation already made at the clearing-house is not affected by the repudiation in this manner of checks by any bank. But each check before being placed in the

box of the drawee bank is marked, for the purpose of identification, with the name of the bank presenting it through clearing; therefore the bank on which it is drawn and which refuses to pay it is able at once to send it back to the bank which brought it in, and to demand a repayment of its amount to be made. If the repayment is refused for any reason, the question lies wholly between the two banks, and the one on which the check was drawn has no means of satisfaction afforded by the clearing-house, but must bring its suit directly against the other." Morse, Banking, § 349.

These views coincide with those expressed by the court in Columbia-Knickerbocker Trust Co. v. Miller, 215 N. Y. 191, 109 N. E. 179, Ann. Cas. 1917A, 348, where it was said in substance that the adjustment of balances by the clearing house is a tentative or provisional payment made before the banks have an opportunity to verify signatures of checks drawn upon them or to ascertain the state of the drawer's account; that although the point has not been expressly ruled upon, it has been assumed in many cases that presentment through a clearing house is sufficient. The provisions of the Uniform Negotiable Instruments Act were in the mind of the writer of the opinion for those which are applicable were specifically referred to.

In view of the established practice of banks to exchange checks and adjust balances through the clearing house in all cities where there is one, it should be held that the presentment of a check held by a member bank and drawn upon another member bank, when made at the clearing house in accordance with the regulations of the clearing house association, is a sufficient presentment to subject the drawee bank to all the consequences which follow as a matter of law whenever a bank wrongfully refuses to pay a depositor's check. Under the circumstances mentioned and to all intents and purposes, the refusal of the drawee bank to make provisional payment of its depositor's check is a dishonor of the check. The bank presenting the check at the clearing house should not be required to present it again at the counter of the drawee bank, unless there is something in the rules of the clearing house association imposing that duty. It should have the right to treat

as final the refusal of the drawee bank to accept the check from the manager of the clearing house and its return through the clearing house.

2.    But it is urged that respondent was not a member of the clearing house association and was not bound by its rules, and that, no matter what the law may be as between member banks, a nonmember bank has the right to insist upon the presentment of checks drawn upon it at its banking house during banking hours. We imagine that a bank ·which persisted in maintaining that attitude would not long enjoy the privilege of clearing its checks through the clearing house. When, by arrangement with a member bank, an outside bank gains admission to the clearing house, the member bank becomes its agent and its rights and liabilities should be determined by applying the principles of the law of agency. See Streissguth v. Nat. German-American Bank, 43 Minn. 50, 44 N. W. 797, L. R. A. 363, 19 Am. St. 213. By entering into such an agreement the nonmember bank becomes a party to and is bound by the rules of the clearing house of which it has knowledge. Magee, Banks & Banking, § 354.

Respondent selected the Bankers National Bank as its agent to represent it in the clearing house. It is chargeable with the consequences of the acts of its agent fairly within the scope of the authority conferred. While the Bankers National continued to represent respondent in the clearing house, Minneapolis banks holding checks drawn upon the respondent had the right to present them to the Bankers National for payment at the clearing house. They were not required to take them to respondent's banking house and present them there, and respondent did not expect them to do so. We infer from the record that on October 21 respondent was hard-pressed for funds and was unable or at least had failed to deposit money enough with its representative to take care of its checks. We perceive no valid reason for holding that the presentment of appellant's check to the Bankers National Bank at and through the clearing house was not a good presentment or that it did not have the same effect as if the check had been taken to respondent's bank and presented for payment there.

We do not agree with the suggestion that the Midland National Bank was at fault and that appellant should look to it as the responsible author of the injury he has suffered.  The record shows that respondent alone is to blame for the dishonor of a good check properly presented by the holder at the clearing house to respondent's agent representing it in the clearing house.  By its course of conduct respondent invited all Minneapolis banks holding checks against it to bring them to the clearing house for presentment and clearance in the usual manner, and it cannot now be heard to say that a presentment so made was not sufficient.

Appellant made out a prima facie case and should have been allowed to go to the jury.  The order denying a new trial is reversed and a new trial granted.